Good afternoon, Thomas A. Kniff for Razor & Kniff PC for the defendant appellant. Go ahead. Okay, thank you. Members of the court, in an age where a criminal defendant's right to a trial by jury is being exercised with increasing sparsity, the case at bar is of particular importance. This is an appeal that asks this court whether a guilty plea, which the evidence demonstrates was the product of coercive tactics by a defense counsel, can be deemed a provident one. Alternatively, this appeal asks this court to consider what we submit is the opposite side of the same coin. That is, whether a defense counsel's conduct in pressuring his client into surrendering his Sixth Amendment right to trial and accepting a guilty plea he otherwise was not inclined to accept can ever be deemed reasonable pursuant to Strickland v. Washington. Haven't you waived the inadequacy of counsel in the court below? You were asked specifically whether you were making that claim, and the answer was given, no, we are not making that claim. Your Honor, I don't believe that the counsel that argued the motion in the court below waived that claim. I don't believe that the case law supports that. I think that what the record below indicates was the district court indicated a very obvious disdain for the ineffectiveness argument, and counsel did indeed walk away from it during the process. It sounds pretty clear to me. I believe, Your Honor, what is less clear is whether the case law says that waiving that argument in the context of a hearing means that it can't be raised. I believe the case law is ambiguous with respect to that. But what I will say, Your Honor, is in some ways I think the issue, the reason I said it's opposite sides of the same coin is in this case the argument regarding ineffectiveness of defense counsel is part and parcel of the primary argument in the motion to withdraw the guilty plea in the motion of this appeal is that defense counsel was coercive or acted coercively in having the defendant and encouraging the defendant to plead guilty, and our argument is that if that coercion is found, we have an involuntary plea. It doesn't matter whether or not counsel... Did he overcome the coerciveness only when his co-defendant was acquitted? No, I know that's a convenient argument. Your client with his first counsel was set to go to jail for many years. The next counsel comes along and gets him what looks, you know, from many cases that have looked like a wonderful deal, and he accepts it. Respectfully, Your Honor, I don't believe this court reaches, the argument is not framed whether or not this was a good deal or not. If the plea was involuntary... Our question is whether it was involuntary. The government, and I believe the district court, were remiss in misconstruing defense counsel's argument in that form. This is not a situation where it's about actual innocence or whether or not counsel was effective in orchestrating this deal for the defendant. The question is whether counsel's actions rendered the plea involuntary. If the court finds that, and I believe there's ample evidence that that is what occurred here, then the only question is might not the defendant have accepted the plea but for that coercion. I believe we've demonstrated that as well. Part of the question that the court is posing to defense counsel I think underscores why it is that not only the government misconstrues our argument but that the district court in adopting the government's arguments abused its discretion. Another error that the government makes in its arguments, and that I believe was also an error adopted by the district court, is talking about these promises being collateral. A defendant appellant is not contesting the fact that whether or not he got to keep his business may have been a collateral consequence of a plea. Again, that is a red herring. The issue before this court and the issue that was before the district court, had the district court properly weighed the arguments, was whether what counsel was doing by making these outlandish claims that because of his bravado and his reputation and his prowess, if the defendant pleads guilty he'll save his dealership. Claims that, by the way, are completely corroborated by pages 877 through 889 of the appendix in which he doubles down on those claims once Mr. Bicall indicates that he wants to withdraw his plea and wants this fee dispute. The question is whether something as important as the defendant appellant's livelihood is a sufficient basis for coercion, and I would say it would be akin to if you have a situation where a defendant in a criminal case falls behind on his bill to a defense attorney who, let's say, represents a lot of organized crime figures, and that defense attorney says, you know what, you're in the hold of me for a couple of hundred thousand dollars, and unless you plead guilty, if you insist on making me go to this trial without getting paid, one of my other clients is going to do harm to your family. Now that, by the way, nothing like that happened here, but that harm would not be a direct consequence of the guilty plea, such as the amount of jail the defendant was looking at and so forth, but it certainly would be enough to overcome someone's will, and that is akin, although of a different magnitude, but still a very serious magnitude as to the conduct that occurred here, and again, I point out for the court, it's conduct that is really corroborated not only by Mr. Bicall's affidavit, not only by his assistant's affidavit, who it is uncontested by Mr. Bellinger, at least, who sat in on really every meeting and was at one point even represented by Mr. Bellinger, as Mr. Bellinger concedes, but it is corroborated by what is said in Mr. Bicall's affidavit and what is not said. Nowhere in that affidavit, by the way, does he deny the deals with GM that are then corroborated by the emails that are included in the appendix in really a visceral and quite disturbing way where he refers to Mr. Bicall as the little scumbag, where he talks about destroying his reputation in the papers, possibly doing things that are going to impact him negatively at sentencing and going forward and letting GM know that now he's going to destroy it. You're over your time. You have some rebuttal. You want to use it now? I'll use my rebuttal. Thank you. All right. We'll hear from the government. Good afternoon, your honors. May it please the court. This is true role representing the United States in the appellee, and I was also counsel below, and this court should affirm the judgment of the district court in its entirety. Mr. Bicall's arguments of this court simply rely on a misreading of the record below and do not reflect any and do not point to any abuse of discretion on the question of the denial of his motion to withdraw his guilty plea and on the question of ineffective assistance of counsel. Nor was there any plain error in the fine imposed by the court. On the first point, to follow on counsel's arguments as to the question that's before this court, which is, did the district judge abuse her discretion in denying that motion to withdraw his guilty plea? And the answer is simply no, and the record makes it clear that the district court considered each and every factor identified by this court's precedence in denying that motion. It considered in a lengthy oral argument, it would point to that transcript as we did in our brief, a very lengthy, considered and deliberate oral argument where she heard lengthy arguments from both the government and Mr. Bicall on the question of whether he should be able to withdraw his plea for the very reasons he's been arguing to this court today. Things about agreement with GM, things about seeing and hearing wiretaps. All of those arguments were made, considered by the court, and they were rejected and it was not an abuse of discretion to do so. And the record, I think, makes that clear on the question of timing, a factor identified by this court. The court discussed that with Bicall's counsel, addressed it, talked about his claims of innocence at length, and weighed each of those factors to reject his arguments and followed this court's precedent that a defendant's sworn statements that he in fact committed the crime with which he's charged are often enough on their face to deny a motion such as Mr. Bicall's. And that's what happened below. And that's reflected in the district court's hearing, the fact that the district court took a break, came back after recess, and directed the parties to Mr. Bicall's allocution. And in the district court's words, characterized that as a fulsome, thoughtful, deliberate allocution that established his guilt under oath. Those sworn statements contradicted every argument Bicall's made in support of his motion to withdraw, and the arguments he now makes on appeal. And it was not an abuse of discretion to deny that motion below. Now, on the ineffective assistance of counsel claim that's before this court, we agree with the question that this is waived, this was waived, and it's a question of waiver. We don't argue forfeiture, we argue waiver. And that's very clear from the transcript at pages 196 to 97 in the appendix, where on two different occasions, the district judge asked counsel directly, are you making an ineffective assistance of counsel argument and claim? Do I need to make a finding under Strickland? And the answer to that was very clearly no. Mr. Bicall says no case for the proposition raised in his arguments a few minutes ago that he could waive such an argument before the district court and then raise it again here on appeal. That would make it impossible for a district judge, such as the judge below, to conduct almost any motion to withdraw hearing, where a defendant who disclaims any ineffective assistance arguments, somehow there still needs to be an evidentiary hearing on the question of ineffective assistance of counsel for fear of them raising it for the first time on appeal. So for all those reasons, it's very different, I think, from the cases that Mr. Bicall cites, which are questions of does a plea agreement's waiver cover claims of ineffective assistance of counsel raised for the first time on appeal? And that's simply not the case here. The circumstance we find ourselves in is more akin to a defendant who, after losing a trial, changes counsel and files a Rule 33 motion making ineffective assistance of counsel claims using that vehicle. And as this court has noted, it is appropriate at that stage for the district judge to address those claims at that stage in the district court with the benefit of new counsel. And that's where Mr. Bicall found himself. He got himself a new lawyer. In fact, it was trial counsel for his co-defendant who was acquitted. He hired that counsel to come into his case and make these claims for the district judge, the exact claims he makes now. And when presented with the opportunity to advance them and have the judge make all of the findings factually and legally, he waived them. He said, I'm not asking for that relief. And so for those reasons, those arguments are waived, and the court can deny his appeal and affirm the judgment on that basis. But even if they weren't waived, Your Honors, those claims are meritless. The questions that he raises about some suspected agreement with General Motors, a fee dispute that he describes in the review of wiretap calls, all of those arguments don't have support in the record. Disagreement with GM, Bicall conceded in his reply at page 9 that it's entirely collateral, that question under this court's holding in Padilla. On the question of the fee dispute, as they conceded at the hearing, while the back and forth that happened with counsel and the former client, it's certainly colorful language certainly in what he presented to the district judge. And all of that happened after he chose to plead guilty and to swear to tell the truth and admit his guilt. So all of that conduct postdated the plea. And it has no bearing on the questions that were before the court, and the district judge, again, considered those and made that finding that it did postdate everything that was before the court. And then finally, to the wiretap calls, as former counsel's affidavit makes clear, those tapes were presented to Mr. Bicall. They were offered to be played to a mock jury, and he declined. And ultimately, on each of these, there simply isn't prejudice. The defendant, as he stated in his brief, found the offer that his former counsel got him, the plea offer, to be a wonderful offer that was zero to six months. So we don't think that there's any prejudice that he could establish here on any of the arguments he makes, particularly given the fact that that generous plea could have been withdrawn by the government at any time. It was in his interest to take that plea and to take it then before trial. And so, your honors, there are no questions as to that part of the argument. I would just say, as to the final point Mr. Bicall makes on the fine, the record, again, does not support his arguments. The district judge below made it very clear that she was imposing a fine to reflect the seriousness of the offense here, which was very serious, as the government argued. That sentencing, as the district judge found, she chose not to incarcerate Mr. Bicall. She chose to put him on community confinement. And as the district judge characterized it, it was an exceedingly lenient sentence. And so to make up for that, the district judge made clear at sentencing that doubling the amount and imposing the fine that the district court did, that that was going to be necessary to reflect the seriousness of the offense. And so on that record, it certainly is not plain error to impose that sentence. And if there are no questions, the government will rest on its papers. Thank you. We'll hear the rebuttal. Mr. Kniff? I would emphasize, again, to the members of the court, the issue here is the coercive tactics, the promises, the forced ignorance, and inducements, the same type of things that this court referenced in its decision in U.S. v. Malcolm, which is part of our brief, that caused Mr. Bicall to accept this plea. Not ineffectiveness, not direct or collateral consequences, but the power of those inducements and that coercion. The district court did abuse its discretion because the district court, with the review of the hearing minutes shows, did not weigh those factors, did not take them seriously, never asked why, if Mr. Bicall had indeed heard these tapes, why there was a letter attached to the motion, page 77 of our appendix, from Mr. Bicall's associate, Melissa Irwin, which there's no fair reading of that letter other than indicating that Mr. Bicall was receiving these recordings for the first time on November 22nd, 2017, six weeks approximately after his plea. Contrary to Mr. Roll's assertion, Mr. Bicall never says in his affidavit that he went over and he reviewed these tapes with Mr. Bicall. He never says that, and I ask the court to review that affidavit again. Mr. Bicall, Mr. Bellinger, excuse me, is unsparing in his affidavit against Mr. Bicall and even against current appellate counsel. He does not leave much to the imagination. One thing he does leave to the imagination is any indication that he sat down and he reviewed these tapes with Mr. Bicall, which is what is more suspect is that Mr. Bellinger spends two pages of that, two substantive pages of that affidavit, talking about how embarrassing and how damaging the tapes were and how worried my client was about what would come out in those tapes without ever saying that he played them or listened to them at all. Mr. Bellinger does not leave much to the imagination. One thing he does leave to the imagination is any indication that he sat down and he reviewed these tapes with Mr. Bicall, and seemingly omits the fact that as the government, to their credit, concedes in their brief that they moved in limine months earlier to never use those tapes, and as the government characterizes them in their brief, they were irrelevant to the arguments at hand and were not going to be part of this trial. Yet Mr. Bellinger in his own affidavit talks about not only how big of a concern they were to Mr. Bicall, and they have only been a concern if Mr. Bellinger editorialized them because he, by omission, states that he never played them for counsel, but he even wanted Mr. Bicall to convene a mock trial regarding tapes that the government concedes were not part of their motion in limine, were irrelevant, and not going to be used. There is no way, if the district court had applied scrutiny to what was included in our motion, rather than just giving credit to the robotic incantations of the plea hearing, which is, by the way, all in substance the district court did, I would direct the court's attention to 217 of the appendix where the district court says, the defendants have offered no evidence of coercion, simply the charge. That's simply not true. The letters that Mr. Rohl references regarding the fee disputes, the letters regarding threats and promises and handshake deals, true, they've occurred after Mr. Bicall was in the process of discharging Carter, Ledyard, and Milburn. Why else would they have been sent? But they inform the pre-plea conduct that Mr. Bicall had alleged in his brief. You can't look at those letters in a vacuum. They substantiate the claims that Mr. Bicall was making in his brief. In fact, one of the most threatening letters from Mr. Bellinger was to me in an email where he said essentially that he's going to ruin Mr. Bicall by coming out with these sensational allegations and allusions to these paramore tapes. That email was written two days after Mr. Bicall signed his affidavit as part of this motion to withdraw, which Mr. Bellinger would not have been aware of at that point. So it diffuses any allegation that Mr. Bicall was inventing these facts or using what Mr. Bellinger was doing post-plea to add credence to his motion to withdraw. We have your argument. Thank you very much.